IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 542, | : : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| ALLIED ERECTING & DISMANTLING CO., INC., Defendant. | : : : : | No. 12-6579 |

# MEMORANDUM

Schiller, J.                                                                                                          March 26, 2013

The International Union of Operating Engineers, Local Union No. 542 ("Union") requests that the Court issue a declaratory judgment that the collective bargaining agreements it entered into with Allied Erecting & Dismantling Co., Inc. ("Allied") are terminable. Allied's counterclaim seeks a declaratory judgment that the agreements continue to bind the Union. For the reasons set forth below, the Court finds that the agreements are terminable with reasonable notice by either party.

## I.     BACKGROUND

The relevant facts in this case are undisputed. In 1992, the parties entered into two collective bargaining agreements that outlined the wages and working conditions for certain employees at a facility in Fairless Hills, Pennsylvania, where the Union was dismantling a closed steel plant. (*See* Pl.'s Br. in Supp. of Req. for Declaratory J. [Pl.'s Br.] at 2; Def.'s Br. on Issues [Def.'s Br.] at 1.) Both agreements state that they will terminate upon Allied's completion of the Fairless Hills project or any other project to which Allied extends the agreements. (*See* Answer Ex. A [Operator Agreement] at 17 ("This Agreement . . . shall terminate upon the AED's completion of the Project.

As to any jobsite to which this Agreement is extended . . . the Agreement . . . shall terminate upon the completion of AED's work at such jobsite."); *id.* Ex. B [Helper Agreement] at 16 (same).) Over twenty years later, the project continues, and is anticipated to continue for at least another five years. (Pl.'s Br. at 3; *see also* Def.'s Br. at 2.)

In August 2011, the Union sent Allied a notice of its intent to terminate the collective bargaining agreements and requested negotiations for successor agreements. (*See* Def.'s Br. at 2; Pl.'s Br. at 3.) Thereafter, Allied filed a complaint with the National Labor Relations Board ("NLRB") alleging that the Union's notice of its intention to terminate the agreements violated the National Labor Relations Act ("NLRA"). (*See* Def.'s Br. at 2; Pl.'s Br. at 4.) The NLRB Regional Director dismissed the charge and Allied filed an appeal. (Def.'s Br. at 2; Pl.'s Br. at 4.) The Office of Appeals is holding consideration of Allied's appeal in abeyance during the pendency of this matter before the Court. (Def.'s Br. at 2; Pl.'s Br. at 4.)

On November 23, 2012, the Union filed its Complaint, stating that the agreements were voidable because they did not contain a definite term of duration. (*See* Compl. ¶¶ 18, 20, 26, 30.) The Union requests that the Court declare the agreements voidable, rescind the agreements, reform the agreements to allow for an expiration date, or grant other and further relief that the Court may deem just and proper. (*See id.* ¶ 7.) On January 28, 2013, Allied filed an answer and counterclaim against the Union, seeking to have the Court declare that the agreements are valid. (*See* Answer ¶ 3.)

The Court has jurisdiction over this dispute under Section 301 of the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. § 185. *See Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. UAW*, 523 U.S. 653, 658 (1998) ("[A] declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid.");

*Mack Trucks, Inc. v. UAW*, 856 F.2d 579, 587 (3d Cir. 1988) ("Congress made clear that [under § 185(a)] . . . proceedings could, for example, be brought . . . under the Declaratory Judgments Act in order to secure declarations from the Court of legal rights under the contract.").

## II. DISCUSSION

### A. Declaratory Judgment Act

Both parties seek declaratory judgments from the Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* The Third Circuit provided the following factors as guidance for when a declaratory judgment is appropriate: (1) the absence of a state court proceeding involving the same issues and parties; (2) the likelihood that the declaration will resolve the uncertainty of the obligation which gave rise to the controversy; (3) the convenience of the parties; (4) the public interest in a settlement of the uncertainty of obligation; and (5) the availability and relative convenience of other remedies. *See Nat'l R.R. Passenger Corp. v. Penn. Public Util. Comm'n*, 342 F.3d 242, 258 (3d Cir. 2003). The Declaratory Judgment Act provides the federal courts with "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

The Court finds that declaratory judgment is appropriate in this case. First, the Court is not aware of any state court proceeding that has determined, or will determine, the avoidability of the parties' agreements. Second, the Court's finding on whether a party may void the agreements would

resolve the parties' uncertainty. Without the Court's determination, the parties are paralyzed by this lack of clarity, and negotiations between Allied and the Union have stalled. Third, the Court's determination would convenience both parties. As it currently stands, the Union has provided notice of its intent to terminate, but risks a lawsuit for breach of the agreements if it terminates its performance. On the other hand, Allied is inconvenienced by the uncertainty that the Union may terminate the agreements at any time, halting operations on the project. Fourth, the Court's decision would guide the interpretation and drafting of collective bargaining agreements to the benefit of the general public. Lastly, although there is an appeal pending before the NLRB, the NLRB is holding the appeal in abeyance pending the Court's decision. (Pl.'s Br. at 4.) Although the NLRB may interpret collective bargaining agreements, "the Board is neither the sole nor the primary source of authority in such matters. Arbitrators and courts are still the principal sources of contract interpretation." *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 202 (1991). Therefore, the Court will exercise its discretion to issue a declaratory judgment on the status of the agreements.

     **B.**    **The Agreements Contain Indefinite Terms of Duration**

"Federal law governs the construction of collective bargaining agreements, and traditional rules of contract interpretation apply when not inconsistent with federal labor law." *IBEW Local Union No. 102 v. Star-Lo Elec., Inc.*, 444 F. App'x 603, 607 (3d Cir. 2011). Labor contracts that do not contain a fixed duration clause are terminable upon reasonable notice. *See Aircraft Banking Sys. Corp. v. UAW*, 52 F.3d 324 (6th Cir. 1995); *Montgomery Mailers' Union No. 127 v. Advertiser Co.*, 827 F.2d 709, 715 (11th Cir. 1987) ("Labor contracts of indeterminate duration or ones that do not provide a manner of termination are terminable at will."); *Commc'ns Workers of Am. v. Sw. Bell Tel. Co.*, 713 F.2d 1118, 1123 n.4 (5th Cir. 1983).

Both agreements at issue state that they terminate upon Allied's completion of the Fairless Hills project or, if the agreements are extended to other projects, upon the completion of Allied's work on those projects. (*See* Operator Agreement at 17; Helper Agreement at 16.) While both parties acknowledge that agreements of indefinite duration are voidable, the parties dispute whether these agreements are "indefinite." Allied argues that, because the agreements terminate with the completion of the project or projects to which they apply, the agreements are not indefinite. The Eleventh Circuit considered a similar scenario in *Montgomery Mailers' Union*, in which the union argued that the collective bargaining agreement terminated only upon the successful negotiation of a new agreement. *See Montgomery Mailers' Union*, 827 F.2d at 715. In refusing to find that the agreement bound the parties until they negotiated a new agreement, the Eleventh Circuit acknowledged that "[t]he side *not* desiring a change could refuse to agree . . . . Each side could stand entrenched knowing the contract would continue as it was. The side desiring to alter the terms or conditions of the relationship would never have a prayer of success." *Id.* (quoting *Kaufman & Broad Home Sys., Inc. v. Int'l Bhd. of Firemen*, 607 F.2d 1104, 1110 (5th Cir. 1979) (internal quotation marks omitted)). The court found that reading the agreement to continue until a new agreement was negotiated was "contrary to fundamental principles of law, our established national labor relations policy and the intent of Congress expressed in the Labor Management Relations Act of 1947." *Id.*

The Court agrees with this reasoning and finds that the agreements at issue here are of indeterminate duration and therefore may be terminated by the parties. *See id.*; *NLRB v. Jervis B. Webb Co.*, 979 F.2d 855 (9th Cir. 1992); *Boeing Airplane Co. v. Aeronautical Indus. Dist. Lodge No. 751*, 91 F. Supp. 596, 603 (W.D. Wash. 1950) (concluding that an agreement which remained in effect "until a new agreement has been reached" could be terminated by parties with notice). Both

5

agreements state that they terminate upon Allied's completion of the Fairless Hills project or the various projects to which the agreements are extended. (*See* Operator Agreement at 17; Helper Agreement at 16.) Allied has "complete discretion" over whether to extend the agreements to other projects. (*See* Operator Agreement at 2; Helper Agreement at 2.) Other than these provisions, the agreements fail to set forth a date, a year, or even a maximum number of years during which the contracts will remain in place. Therefore, according to their terms, the agreements may continue indefinitely. Similar to the defendant in *Montgomery Mailers' Union*, Allied could extend the agreements indeterminately, for example, by stalling the Fairless Hills project or contracting for additional work on that project. *See Montgomery Mailers' Union*, 827 F.2d at 715. Allied may also, in its complete discretion, contract for additional work on other projects, extend the agreements to that additional work, and subsequently bind the Union to the agreements for an unknown and perpetually endless time period. Like Lord Tennyson's brook, "men may come and men may go, [b]ut" these agreements "go on for ever." *See* Alfred Tennyson, "The Brook," *The Complete Works of Alfred Lord Tennyson Volume II* 124 (New York, Frederick A. Stokes Co. 1891). Defendant's reading of the agreements could also theoretically lock in the wages and benefits designated in the agreements indefinitely, depriving workers of the ability to negotiate pay raises or additional benefits. Not allowing the parties to terminate the agreements in this case would be inconsistent with the aims of federal labor law. *See* 29 U.S.C. § 151 (finding that "[e]xperience has proved that protection by law of the right of employees to organize and bargain collectively safeguards commerce" and declaring a policy of "encouraging the practice and procedure of collective bargaining"); *see also Local Union No. 28, Int'l Bhd. of Elec. Workers v. Md. Chapter Nat'l Elec. Contractors Assoc.*, 194 F. Supp. 494, 501 (D. Md. 1961) (concluding that not allowing a union to

terminate a contract would be "contrary to the general policy of the law, as set out in the statutes and interpreted by the Supreme Court" and other courts). Therefore, Plaintiff or Defendant may terminate the agreements with reasonable notice.

## III. CONCLUSION

For the reasons set forth above, the Plaintiff or Defendant may terminate the agreements with reasonable notice. An Order consistent with this Memorandum will be docketed separately.